**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**DHL GLOBAL CUSTOMER SOLUTIONS**
**(USA), INC., an Ohio corporation**

      **Plaintiff,**

**vs.**                                                           **Case No. 11-cv-61618-DMM**

**CLINE YORK, an individual, and**
**KUEHNE + NAGEL, INC., a New York**
**Corporation,**

      **Defendants.**
_____/

**DEFENDANT CLINE YORK'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION**

Defendant Cline York ("York"), by and through his undersigned counsel, hereby responds to Plaintiff DHL Global Customer Solutions (USA), Inc.'s ("DHL or Plaintiff") Emergency Motion for Preliminary Injunction.  As detailed below, DHL has failed to meet the requirements necessary to obtain this extraordinary remedy.

**STATEMENT OF FACTS**

York began his employment with DHL in 2003.  Six months later, he became Global Customer Manager for Dell Business Development.  York was again promoted in 2008 to Vice President of Dell Global. In or about March 2011, a month prior to his resignation, York was promoted to Regional Vice President of the Personal Computers & Notebooks Sector for DHL's Asia-Pacific Region.  However, York left before he could fully transition into this role.  Prior to his resignation, his time and energy was spent on logistical issues, such as finding and training his replacement, preparing to move to Singapore, and interviewing potential employees. York

submitted his resignation from DHL on or about April 11, 2011.  He performed no work for DHL after that date.

When York began his employment with DHL in 2003, he entered into a Confidentiality and Conflict of Interest Statement and Agreement ("Confidentiality Agreement").   The Confidentiality Agreement did not contain a covenant not to compete.

On or about January 1, 2011, York signed an Executive Employment Agreement ("Noncompetition Agreement").  This was the only noncompete clause York entered into while employed by DHL.

While employed by DHL, York worked almost exclusively with one client, Dell, in the Personal Computers & Notebooks Sector.[1]

York currently works for Kuehne + Nagel, Inc. ("K+N") as the Senior Vice President and Global Sector Head for the Industrial Sector.  There is no overlap between that sector and the one York previously worked in at DHL.

Prior to working for DHL, York spent 22 years working at Federal Express, another competitor of DHL.  His entire career has been spent in the freight forwarding business.

On or about April 29, 2011, DHL sent York a letter reminding him of the Confidentiality Agreement and the Noncompetition Agreement.  In response, counsel for Kuehne + Nagel, Inc. responded.  The letter reads, in part:

> To be clear, Mr. York has not and will not provide to KN in any manner, any trade secret or other confidential business information that he may have acquired from your client.  During the six months after the termination of Mr. York's employment by DHL, Mr. York will not call on nor assist other in calling on clients of DHL with whom he had contact as a DHL employee.
>
> It is our intention to observe the terms of the contract to which your letter refers and KN makes these affirmative representations so that our intentions are

---

[1] York did attend one meeting with Hewlett Packard prior to his resignation.

clear. If your client holds the view that it has a right to enforce the agreement or to bring an action against KN irrespective of the steps KN has taken above, we invite you to share such information as you believe should be persuasive to KN.

Despite these assurances, DHL filed a complaint against York and KN on or about July 22, 2011 for breach of contract and tortious interference with contractual/advantageous business relationships.  [Doc. 1].  At the same time, it filed the Emergency Motion for Preliminary Injunction and Supporting Memorandum of Law at issue now.  [Doc. 4].

**MEMORANDUM OF LAW**

**I.**       **INTRODUCTION**

There are essentially three types of provisions of the Noncompetition Agreement and Confidentiality Agreement.  DHL seeks to enforce with a preliminary injunction: (1) the covenant not to compete; (2) the covenants not to solicit customers or employees; and (3) the confidentiality provisions found in both agreements.  DHL makes no allegations that York has disclosed any confidential information.  DHL makes no allegations that York has attempted to solicit DHL's customers or employees.  DHL only alleges that York has accepted work with a competitor (although it then presumes inevitable violations of the other two provisions from that single fact).  Thus, the only provision that is really at issue is the non-competition clause, and that is what its motion is really about.  DHL seeks this preliminary injunction to prevent York from working for K+N in any capacity.  As demonstrated below, DHL fails to meet the burdens required for this drastic action.

**II.**      **A PRELIMINARY INJUNCTION IS INAPPROPRIATE.**

3

Plaintiff has failed to make the requisite showing for a preliminary injunction. The moving party must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Four Seasons Hotels And Resorts, B.V., v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003). "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion." *Id*; *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 179 (5th Cir. 1975) (a preliminary injunction "is the exception rather than the rule").[2]

It is important to distinguish between the procedural and substantive laws in this case. Since Plaintiff chose to file this case in federal court, it is bound by the federal procedural rules applicable to preliminary injunctions. *Southern Wine and Spirits of America, Inc. v. Simpkins*, No. 10-21136, 2011 WL 124631, *2 (S.D. Fla. January 14, 2011) ("A federal court's authority to issue a preliminary injunction is derived from Federal Rule of Civil Procedure 65, which makes a motion for preliminary injunction a federal procedural issue."). As explained in more detail below, this is especially important when it comes to the showing required for irreparable harm.

**A.      DHL Fails to Establish a Substantial Likelihood of Success on the Merits.**

"A substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated. It is not enough that a merely colorable claim is advanced." *Southern Wine*, 2011 WL at *2 (quoting *City of Jacksonville v. Naegele Outdoor Adver. Co.*, 634 So.2d 750, 753 (Fla. 1st DCA 1994)). "Prior to issuing a temporary injunction,

---

[2]      Decisions of the Fifth Circuit Court of Appeals decided prior to October 1, 1981 are binding within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

a trial court must be certain that the petition or other pleadings demonstrate a *prima facie*, clear

legal right to the relief requested."). *Naegele*, 634 So.2d at 753. Defendant fails to meet this

burden.

In order to succeed on the merits, "an employer seeking to enforce a restrictive covenant

must prove (1) the existence of one or more legitimate business interests justifying the covenant

and (2) that the contractually specified restraint is reasonably necessary to protect the established

business interest of the employer." *Southern Wine*, 2011 WL 124631 at *8; Fla. Stat.

§542.335(1)(b-c). DHL cannot establish either.

### 1.    *There are No Legitimate Business Interests Justifying the Non-Competition Clause.*

Under Florida law, a restrictive covenant is only enforceable if it is supported by a

legitimate business interest. Fla. Stat. §542.335(1)(b). Section 542.335 requires any party

seeking to enforce a restrictive covenant to plead and prove the existence of one or more

legitimate business interests justifying the proposed restriction. §542.335(1)(b), Fla. Stat. "Any

restrictive covenant not supported by a legitimate business interest is unlawful and is void and

unenforceable." *Id.* In adopting §542.335, the Legislature codified the "unfair competition"

approach to evaluating employee noncompete agreements. *See,* John A. Grant, Jr., & Thomas T.

Steele, *Restrictive Covenants: Florida Returns to the Original "Unfair Competition" Approach*

*for the 21st Century,* Fla. B.J., Nov. 1996.[1] This approach is consistent with the overwhelming

---

[1]     The First District Court of Appeal recognized the authority of this article in *University of Florida, Bd. of Trustees v. Sanal*, 837 So.2d 512 (Fla. 1st DCA 2003), noting that the authors were the chief senate sponsor and the bar's principal drafter of the revised statute.

majority of jurisdictions which permit such agreements. *Hapney v. Central Garage, Inc.,* 579

So.2d 127, 130 (Fla. 2d DCA 1991).[2]

A restrictive covenant that prohibits competition *per se* is void and unenforceable. *See*

*Austin v. Mid State Fire Equipment of Central Florida, Inc.,* 727 So.2d 1097, 1098 (Fla. 5th DCA

1999) (holding that covenant which serves only to prohibit competition constitutes unreasonable

protection); *Hapney¸*579 So.2d at 134 (holding that prohibition on competition *per se* violates

public policy). In this case, Plaintiff can enforce its restriction against Defendants only upon a

showing that such enforcement is reasonably necessary to protect Plaintiff's legitimate business

interests.

Section 542.335 provides a number of examples of legitimate business interests including

trade secrets, confidential business information, substantial relationships with specific

prospective or existing customers, customer good will, and specialized training. Fla. Stat.

§542.335(1)(b). The employer must plead and prove existence of one or more "legitimate

business interests" of the employer to justify enforcement of the restrictive covenant. Fla. Stat.

§542.335(2)(b). In effect, an employer must have a good business reason to enforce the

restrictive covenant. If no legitimate business interest is proven, the restriction is unlawful and is

void and unenforceable. Fla. Stat. § 542.335(2)(b)

In its motion for temporary injunction, Plaintiff identifies every example given in

§542.335 as a legitimate business interest in this case. Each potential interest will be addressed

separately.

---

[2]    Although decided prior to the enactment of §542.335, the *Hapney* decision provides
useful authority as it utilized the same analysis for evaluating noncompete agreements which was
later adopted by the legislature.

(a)      Trade Secrets & Confidential or Proprietary Information

"Under Florida law, a trade secret consists of information that (1) derives economic value from not being readily ascertainable by others and (2) is the subject of reasonable efforts to maintain its secrecy. Information that is generally known or readily accessible to third parties cannot qualify for trade secret protection." *American Red Cross v. Palm Beach Blood Bank*, 143 F.3d 1407, 1420 (11th Cir. 1998); Fla. Stat. §688.002(4).  General information about a business or sales is not sufficient to constitute a legitimate business interest. *See Passalacqua v. Naviant, Inc.* 844 So. 2d 792, 796 (Fla. 4th DCA 2003) (injunction denied where plaintiff "did not articulate how any activity, method or technique utilized...was unique or proprietary in any way").

In order to constitute a "trade secret" under the Uniform Trade Secrets Act, the information at issue must be the subject of efforts to maintain their secrecy that are reasonable under the circumstances.  Fla. Stat. §688.002 (4)(b); *American Red Cross,*143 F.3d at 1420 ("[i]n a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy").  In *American Red Cross*, the Eleventh Circuit held that an injunction was improper where there was evidence that the Red Cross had not been diligent in protecting its trade secrets.

York began working for DHL in 2003 and began his position as Global Customer Manager for Dell Business Development six months later in 2004.  York was again promoted in 2008 to Vice President of Dell Global.  Finally, in January of this year, four months prior to his resignation, York was promoted to Regional Vice President of the Personal Computers & Notebooks Sector for DHL's Asia-Pacific Region.  While this promotion was granted in January, it never took effect and York left before he could fully transition into this role.

Prior to January 2011, York did not have a noncompete agreement with DHL.[3]   The agreement at issue here was only in effect for the final four months of the eight-year employment relationship.   This undermines DHL's argument that a legitimate business interest exists to justify the restrictive covenant.   It shows that there was no significant effort to maintain the confidentiality or secrecy of the information DHL now claims as trade secret, confidential, and proprietary.   For seven and a half years, York was privy to this information.   He was not bound by any noncompete clause and was free to leave DHL for a competitor at anytime.

The promotion in January cannot provide a legitimate business reason to justify the noncompete since York never actually transitioned into this position.   Instead, it appears that DHL is claiming that the knowledge and information he gained prior to the noncompete justifies the noncompete.   However, the facts are clear: DHL's failure to diligently protect its information has rendered it incapable of the designations trade secret, confidential, or proprietary.

(b)      Substantial Relationship with Customers and Customer Good Will

While employed by DHL, York had one client: Dell.   York has not attempted to solicit Dell or divert any of its business from DHL to K+N and DHL is well-aware of K+N's intention to abide by the terms of the non-solicitation and confidentiality clauses.   Plaintiff can offer no proof to the contrary.   Moreover, York is not working in the same industry sector.   He is now in the Industrial sector at K+N, a sector that does not include personal computers.   While at DHL, he had no contact with its industrial accounts.   His relationship with Dell, or any other personal computer client for that matter, cannot justify a restriction on his ability to work in a completely different sector of the industry.

---

[3]      York did sign a Confidentiality and Conflict of Interest Statement and Agreement in 2003; however, this agreement did not contain a covenant not to compete.  As previously noted, York intends to abide by the confidentiality and clauses contained in this agreement and the Employment Agreement.

(c)      Specialized Training

"To constitute extraordinary employee training under Florida law the training must go beyond what is usual, regular, common, or customary in the industry in which the employee is employed." *Southern Wine*, 2011 WL at 124631 *4 (internal quotations omitted).  It is not enough that DHL trained York; it must be specialized training:

> The statute requires evidence of how unusual, uncommon, or distinct the quality of training that Simpkins received was in comparison to the standard training for the industry. A demonstration that an employee's training was extraordinary necessarily requires a discussion of how different from the norm the training actually was.

*Id*.  "Training is classified as extraordinary when it exceeds what is usual, regular, common, or customary in the industry in which the employee is employed." *Loans of America FL, LLC v. Rapid Auto Loans, LLC,* No. 10-60416-CIV, 2010 WL 2754336, *4 n. 1 (S.D. Fla. July 12, 2010) (citing *Dyer v. Pioneer Concepts*, 667 So.2d 961, 964 (Fla. 2d DCA 1996).  DHL has not offered any discussion regarding the unusual or uncommon nature of the training.

Much of the training DHL relies upon for this argument is only applicable to DHL.  For example, it is of no importance that York was trained on DHL's internal performance review system as it can be of no use to him at a competitor.

Plaintiff conflates its specialized training and confidential information arguments, effectively saying that he received specialized training because he was given access to this information.  The motion for temporary injunction fails to identify how any specific training DHL provided to York is unique in the industry.  The fact that most, if not all, of his training took place prior to the existence of any noncompete provision further undermines its use as a legitimate business interest.  In December 2010, York would have been free to leave, with all of his training, and compete with DHL.

**2.      *The Broad Restriction Is Not Necessary to Protect the Established Business Interest.***

Even if Plaintiff establishes a legitimate business interest, it cannot prove that the noncompete provision is necessary to protect this interest.  *See TrueBlue, Inc. v. Dyn*, No. 8:09-cv-1894-T-30MAP, 2010 WL 3565756, *4 (M.D.Fla. Sept. 9, 2010)("Florida law is clear that it is Plaintiff's burden to plead and prove that the restraint was reasonably necessary to protect its legitimate business interests.")  DHL is requesting this court enter an injunction barring York from working at a competitor in an entirely different sector of the industry.  It is unclear how any of the knowledge, training, or contacts York possesses from his work with Dell personal computers would cause unfair competition now that he is working in the Industrial sector at K+N.

Interestingly, DHL points out that York will be reporting to Robert Krautheim, a former DHL executive whom York once worked under.  Thus, any unfair competitive advantage K+N could possibly gain from York has already, using Plaintiff's argument, inevitably been disclosed by Mr. Krautheim.

"To be enforceable, restrictive covenants must be reasonable with regard to time, area, and line of business." *Exchange Intern., Inc. v. Vacation Ownership Relief, LLC*, No. 6:10-cv-1273-Orl-35DAB, 2010 WL 4983669, *6 (M.D.Fla. Oct. 27, 2010); Fla. Stat. 542.335(1).  The *Exchange Intern* court explained:

> A restrictive covenant which attempts to restrict an employee from working with a competitor "in any capacity" is not enforceable because there is generally a lack of evidence that the former employer would be harmed simply by the employee's employment with a competitor.  The employee can only be restricted from engaging in activities harmful to the legitimate business interest of the former employer.

*Id*. (internal quotations and citations omitted).  DHL is seeking to prevent York from working in a line of business far larger than reasonably necessary to protect its business interests.

**B.      DHL Has Not and Will Not Suffer Irreparable Harm If the Preliminary Injunction is Denied.**

As the Southern District has previously recognized, "[s]ince this is a federal diversity action for a preliminary injunction, and a point of procedural law is at issue, the burden of proof for irreparable harm must be satisfied under the federal standard." *Southern Wine* 2011 WL 124631 at *8. As that court explained:

> A federal court's authority to issue a preliminary injunction is derived from Federal Rule of Civil Procedure 65, which makes a motion for preliminary injunction a federal procedural issue. Under the doctrine enunciated in the *Erie* decision and its progeny, federal courts sitting in diversity apply federal procedural law.

*Id*. (internal quotations omitted).  Thus, the statutory standard found in §542.335 and put forth by Plaintiff, that a "violation of an enforceable restrictive covenant creates a presumption of irreparable injury," is inapplicable. Instead, this Court must use the federal standard, which requires "the movant to show that the asserted irreparable harm is actual and imminent rather than remote or speculative.'" *Id*. (internal quotations omitted).

As the Supreme Court explained:

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61 (1974).  "In order to establish an irreparable harm or injury, a party must show that remedies at law, such as monetary damages, are inadequate to compensate for that injury." *Exchange Intern,* 2010 WL at *3.

Plaintiff has not met this burden. Since there is no evidence of actual and imminent harm, DHL relies completely on the rebuttable presumption found in §542.335. At K+N, York is working in a completely different capacity than he was at DHL. York is working in the Industrial Sector at K+N, the counterpart to DHL's Engineering & Manufacturing/Energy Sector. As Plaintiff acknowledges, York did not work in that sector at DHL. He worked in the Personal Computers & Notebooks subsector of the Technology Sector.

Moreover, at DHL, York had one client: Dell. He has not attempted to solicit or divert Dell's business from DHL, and K+N's counsel has assured DHL that he will not do so during the period of the restrictive covenant.

Plaintiff has offered no proof of irreparable injury, nor can it. There is no actual or imminent harm to DHL, and DHL has failed to show that any harm that may occur cannot be adequately remedied with other compensatory relief. In fact, DHL is seeking both injunctive and compensatory relief since the complaint requests damages. [Doc. 1:11]. *See GPS Industries, LLC v. Lewis*, 691 F.Supp.2d 1337, 1338 (M.D.Fla. 2010) ("based on [plaintiff's] own request for relief, then, it appears that any harm suffered by [plaintiff] for the alleged breach of the Agreement can be quantified into an award of damages"). Even if the Court finds that there is a legitimate business interest justifying the noncompete, a preliminary injunction is improper because of the absence of any threat of irreparable harm. *Salsbury Labs., Inc. v. Merieux Labs.*, Inc., 908 F.2d 706, 708 n. 2 (11th Cir. 1990) (noting that a preliminary injunction was denied because the movant failed to show a threat of irreparable harm, even though it established a substantial likelihood of success on the merits); *Talk Fusion, Inc. v. Ulrich*, No. 8:11-CV-1134-T-33AEP, 2011 WL 2681677, *5 (M.D.Fla. June 21, 2011) ("the threat of irreparable harm is an absolute prerequisite to the issuance of injunctive relief").

**C.      The Threat of Injury to DHL Does Not Outweigh the Potential Damage to York That Will Occur if a Preliminary Injunction is Entered.**

Since DHL has not pled or proven what alleged harm will befall it if York continues in his role at K+N, it is difficult to weigh this harm against the damage to York.  However, it is clear that a preliminary injunction would harm the individual more than the absence of one could possibly harm such a large corporation as DHL.  *See Southern Wine,* 2011 WL 124631 at *9 (finding that "the threatened injury to [plaintiff] is less than the harm that would be suffered by [defendant] if the injunction were to issue" because the defendant, "as a private individual with far fewer resources than a large corporation, is substantially less able to rebound from a loss of business, income or opportunity to work."); *GPS Industries, LLC,* 691 F.Supp.2d at 1338 (finding the threat of plaintiff's "potential inability to eradicate any and all competition in the industry pales in comparison to the effects of a global restriction on competition from [defendant] or any other former GPSI employee").

Once again, the fact that York is working in a different industry sector is important.  DHL has failed to show any harm that would come to it if York is permitted to work in this drastically different role at K+N.  On the other hand, if the injunction is issued, York is necessarily harmed.

**D.      An Injunction Would Disserve the Public Interest.**

Because DHL fails to meet any of the first three requirements for a preliminary injunction, the issuance of an injunction would disserve the public interest.  As the *GPS Industries* court stated:

> In a case such as this, where [plaintiff] has failed to show a likelihood of establishing the restrictive covenant provisions contained in the Agreement are valid and enforceable to protect any legitimate business interests or that, if they are, [defendant] in fact breached those provisions, the refusal of this Court to enforce the restrictive covenants does not disserve the public interest. On the contrary, the refusal serves the public interest by disallowing unreasonable

restrictive covenants to unfairly restrain trade. Accordingly, the public interest considerations weigh against entry of a preliminary injunction.

*GPS Industries*, 691 F.Supp.2d at 1339. Likewise, an injunction would disserve the public interest in the instant case.

## III. CONCLUSION

Plaintiff has failed to meet any of the requisite burdens required for the issuance of a preliminary injunction. It has not demonstrated (1) a substantial likelihood of success on the merits; (2) any irreparable injury that will be suffered without the injunction; (3) that the threat to DHL in the absence of an injunction is greater than the harm to York should one be entered; and (4) that the injunction would not disserve the public interest. For these reasons and for the reasons outlined above, Defendant respectfully requests this Honorable Court Deny DHL's Emergency Motion for Preliminary Injunction and Supporting Memorandum of Law.

Respectfully submitted,

/s/ Ryan D. Barack
Ryan D. Barack
Florida Bar No. 0148430
KWALL, SHOWERS & BARACK, P.A.
133 N. Fort Harrison Avenue
Clearwater, FL 33755
Telephone: (727) 441-4947
Fax: (727-447-3158
Email: rbarack@ksblaw.com
Attorneys for Defendant Cline York

14

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the ___3rd___ day of August 2011 I electronically filed the

foregoing with the Clerk of the Court via the CM/ECF System, which will send a notice of

electronic filing to the following:

Spencer H.Silverglate
ssilverglate@cspalaw.com
Francisco Ramos, Jr.
framos@cspalaw.com
Craig Salner
csalner@cspalaw.com
Clarke Silverglate, P.A.
799 Brickell Plaza, Suite 900
Miami, FL 33131
Telephone: 305-377-0700
Fax: 305-377-3001
Attorneys for DHL

Steven G. Wenzel
swenzel@wfclaw.com
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Telephone: 813-224-0431
Fax: 813-229-8712
Attorney for Kuehne + Nagel, Inc.

/s/ Ryan D. Barack
Attorney